# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MICHELLE HART,
    Plaintiff,

v.

Case No. 09-12088
Honorable Patrick J. Duggan

COUNTRYWIDE HOME LOANS, INC.,
    Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 19, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

This action arises from the foreclosure of real property in the City of Southfield, Michigan, owned by Plaintiff Michelle Hart ("Plaintiff"). In a Complaint filed on May 29, 2009, Plaintiff alleges that Defendant Countrywide Home Loans, Inc. ("Defendant") promised that it would review Plaintiff's mortgage for modification when it had no intention of assisting Plaintiff. Plaintiff asserts the following claims against Defendant based on its alleged promise: (I) Misrepresentation; (II) Violation of the Housing and Economic Recovery Act of 2008 ("HERA"); (III) Bad Faith; (IV) Violation of Defendant's Contractual Obligation to Modify Plaintiff's Loan Pursuant to the Federal Home Affordable Modification Program ("HAMP") and the Emergency Economic Stabilization Act of 2008 ("EESA"); and (V) Violation of the Michigan Attorney General Consent Agreement ("AGCA") dated

October 6, 2008. Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), filed March 15, 2010. This motion has been fully briefed and, on August 17, 2010, this Court heard oral arguments on this motion.

**I. Factual and Procedural Background**

On May 24, 2006, Plaintiff obtained a loan from Defendant to purchase a residence in Southfield, Michigan, and granted a mortgage on the property to Defendant to secure the loan. (Def.'s Mot. Exs. 1-2.) On the same day, Plaintiff obtained a second loan from Defendant and granted a second mortgage on the property to Defendant as security for the second loan. (Def.'s Mot. Exs. 3-4.)

Plaintiff subsequently defaulted on the terms of the first loan and stopped making payments in August 2006. (Def.'s Mot. Ex. 5.) Around the same time, Plaintiff discussed her financial situation and the arrearage with Defendant. Plaintiff was in contact with Defendant regarding a forbearance or work-out plan in 2006, and again in 2007. (Pl.'s Dep. 29-31.) However, Defendant informed Plaintiff that she did not qualify for a forbearance or a work-out plan following the requests in 2006 and 2007. (Pl.'s Dep. 30-31.) Defendant then initiated foreclosure proceedings by advertisement. (*See* Def.'s Mot. Ex. 6.)

A sheriff's sale was held on July 17, 2007, where Mortgage Electronic Registration Systems, Inc. ("MERS"), acting on behalf of Defendant, was the successful bidder.[1] (*Id.*) On August 10, 2007, MERS quit claimed the property to The Bank of New York, as trustee.

---

[1]Plaintiff alleges in her complaint and in response to the present motion that the sheriff's sale took place in August 2008. (Comp. ¶ 10; Resp. at 1.) However, documentary evidence shows that the sale took place in 2007. (*See* Def.'s Mot. Ex. 6.)

(Def.'s Mot. Ex. 7.) Plaintiff's six-month statutory redemption period expired January 17, 2008, at which point legal title to the property vested in the holder of the sheriff's deed. *See* Mich. Comp. Laws Ann. §§ 600.3236-.3240. Plaintiff later requested that Defendant modify the loan on separate occasions in 2008 and 2009. (Pl.'s Dep. 27:14-21.) Defendant denied the 2008 request and failed to respond in 2009. (*Id.*)

As previously indicated, Plaintiff filed this lawsuit on May 29, 2009, contending that, by promising a review for modification with no intent to do so, Defendant made material misrepresentations, violated the HERA, acted in bad faith, violated contractual obligations to modify Plaintiff's loan under the HAMP and the EESA, and failed to review Plaintiff's mortgage pursuant to the AGCA. Defendant seeks summary judgment as to all claims.

## II. Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage, the inquiry "is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243, 106 S. Ct. 2205, 2207 (1986). If a party fails to make a showing sufficient to establish an element essential to that party's case, and that party bears the burden of proof at trial, then an entry of summary judgment is required. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

Substantive law will identify which facts are material—disputed facts that are irrelevant

3

or unnecessary to the outcome will not preclude an entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248, 106 S. Ct. at 2510. Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). There is no genuine issue when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id*. Further, there must be something more than a "scintilla of evidence" to demonstrate the existence of a genuine issue. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

**III. Plaintiff's Interest in the Property**

In its motion for summary judgment, Defendant contends that Plaintiff's claims are untimely because Plaintiff did not file her Complaint until at least 16 months *after* the expiration of the statutory redemption period during which Plaintiff could have redeemed her property from foreclosure. Defendant argues that since legal title to the property has vested in the holder of the sheriff's deed, Plaintiff has lost all interest in the property and any claim to set aside the foreclosure or reform the mortgage is without merit and a legal impossibility.

Under Michigan law, legal title to a foreclosed property vests in the holder of the sheriff's deed unless the property is redeemed within the six-month statutory redemption period. Mich. Comp. Laws Ann. § 600.3236-.3240. The redemption period and procedure are "clearly spelled out" by statute, and the right to redemption generally "can neither be enlarged nor abridged by the courts." *Gordon Grossman Bldg. Co. v. Elliott*, 382 Mich. 596, 603, 171 N.W.2d 441, 444 (1969). Michigan law specifies foreclosure procedures, "leaving no room for equitable considerations absent fraud, accident, or mistake." *Senters v. Ottawa*

4

*Sav. Bank*, 443 Mich. 45, 55, 503 N.W.2d 639, 643 (1993). Since Plaintiff has not alleged fraud, accident or mistake in the mortgage or in the foreclosure proceeding and also failed to redeem the property, legal title to the property transferred to the holder of the sheriff's deed upon expiration of the redemption period.

**A. Equitable Estoppel**

Plaintiff nonetheless contends that Defendant "should be estopped pursuant to the doctrine of equitable estoppels [sic] from raising the issue that the mortgage was post sheriff's sale or redemption given the affirmative conduct in representing to Plaintiff a modification review would ensue." (Resp. at 5.) Plaintiff asserts that she relied on Defendant's correspondence as a representation that Defendant would work with Plaintiff to retain her home and that "Defendant cannot be allowed to unjustly place Plaintiff in a position of reliance then arbitrarily change its position to Plaintiff's detriment." (*Id.*)

Equitable estoppel requires proof of: (1) an act, representation, admission, or omission that intentionally or negligently induces another to believe certain facts exist, and (2) a reliance on those facts to the detriment of the second party if the first party were to be allowed to deny the existence of those facts. *Lichon v. Am. Universal Ins.,* 435 Mich. 408, 415, 459 N.W.2d 288, 292 (1990). Plaintiff fails to satisfy both elements.

First, Plaintiff has not shown any act, representation, admission, or omission by Defendant that induced Plaintiff to believe she would be offered a loan modification. Indeed, Plaintiff admits that Defendant informed her that she did not qualify for a forbearance or loan work-out plan in 2006 and 2007. (Pl.'s Dep. 30-31.) Additionally, Plaintiff states that she did not request modification prior to 2008, that Defendant denied her modification request in

2008, and that Defendant never replied to her modification request in 2009. (Pl.'s Dep. 27.) Accordingly, Plaintiff fails to show any behavior by Defendant that would induce reliance.

Second, Plaintiff fails to establish actual reliance on anything Defendant said or did. Plaintiff cites Exhibit E of her Response as evidence that this Court should estop Defendant from raising the expiration of the redemption period. Exhibit E consists of 11 email messages between Plaintiff and Defendant dated May 29, 2009, to June 3, 2009, and one message from Plaintiff to Defendant dated July 27, 2009. As such, none of the email correspondence precedes the expiration of Plaintiff's redemption period. For Plaintiff to have relied on any act, representation, admission, or omission of Defendant to her detriment as related to the expiration of the redemption period, the act, representation, admission, or omission by Defendant must have occurred prior to the expiration of the redemption period.

Furthermore, even if Plaintiff were to assert that Defendant somehow induced reliance after the expiration of the redemption period, none of the emails contain an admission or representation that could induce Plaintiff to believe she would receive a loan modification. Of the 12 emails, only five are correspondence from Defendant to Plaintiff: the first email confirms that Defendant delayed Plaintiff's June 1, 2009, eviction pending a loan modification review; the second confirms receipt of a fax sent by Plaintiff's counsel; the third instructs an employee of Defendant to contact Plaintiff; and the fourth and fifth are requests by Defendant's employee for Plaintiff to contact Defendant by telephone. Because Plaintiff does not show that Defendant made an act, representation, admission, or omission to Plaintiff regarding a loan alteration prior to the expiration of the redemption period, Defendant is not estopped from raising the fact that Plaintiff's legal title to the property was extinguished in

6

January 2008.

**B. Plaintiff's Claims for Modification**

The fact that Plaintiff's redemption period expired before the filing of this lawsuit impacts several of Plaintiff's claims. Counts II and IV of the Complaint allege that Defendant violated Section 1403 of the HERA[2] and, generally, the HAMP (collectively "Lending Statutes") by refusing to modify Plaintiff's loan. Plaintiff asserts that under the Lending Statutes, Defendant had a duty to modify Plaintiff's loan. Because Plaintiff believes her loan qualified for modification under the Lending Statutes and because Plaintiff believes that loan modification is mandatory for qualified loans, Plaintiff contends Defendant was obligated to modify Plaintiff's loan and failed to do so. Plaintiff's claims fail because the Lending Statutes were enacted *after* Plaintiff lost legal title to the property and the statutes are not applied retroactively. Furthermore, even if the Court assumes that Plaintiff's mortgage was eligible for modification under the Lending Statutes, Plaintiff's claims fail because Plaintiff misconstrues the Lending Statutes. The Lending Statutes do not impose a duty on Defendant to modify every eligible mortgage and thus, even if Plaintiff had been eligible for loan modification, her claims still fail.

The HERA was enacted in July 2008 and the HAMP, part of the EESA, was enacted in October 2008 – six and ten months, respectively, *after* legal title to the property vested in the holder of the sheriff's deed. Therefore, since the Lending Statutes were enacted after Plaintiff's redemption period expired, Plaintiff can only obtain relief if the Lending Statutes:

---

[2]Section 1403 amends the Truth in Lending Act, 15 U.S.C. § 1601, by inserting Section 1639a titled "Duty of servicers of residential mortgages."

(1) are somehow applicable to Plaintiff currently, or apply retroactively; (2) impose a duty on Defendant to modify all eligible loans; and (3) provide a private right of action for a failure to satisfy that duty. None of these requirements are met.

First, the Supreme Court has said that "[t]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S. Ct. 1483, 1497 (1994). Since the Lending Statutes do not contain language indicating retroactive applicability, they must be applied prospectively. As part of the HAMP program, loan servicers, including Defendant, entered into Servicer Participation Agreements requiring participation in various loan adjustment programs described in guidance issued by the Department of the Treasury. (*See* Pl.'s Resp. Ex. A.) HAMP Supplemental Directive 09-01 indicates that "loans currently in foreclosure are eligible [for modification]." (Resp. Ex. I.) The expiration of the redemption period marked the end of foreclosure proceedings for Plaintiff's property, however, rendering Plaintiff's mortgage ineligible. Therefore, because the Lending Statutes are not applied retroactively and because the property's foreclosure proceedings ended before enactment of the Lending Statutes, Plaintiff's now-terminated mortgage is not eligible for relief.[3]

---

[3] Plaintiff cites a Michigan Circuit Court case, *Deutsche Bank National Trust Co. v. Hass*, for the proposition that the HAMP applies to properties past the redemption period at the time of enactment. Plaintiff misconstrues *Hass*: the court in *Hass* merely held that a borrower remains eligible for HAMP review so long as the HAMP was enacted *before* expiration of the redemption period. *Hass*, No. 2009-2627-AV, slip. op. at 9 (Mich. 16th Cir. Ct. Sept. 30, 2009) (attached to Pl.'s Resp. Ex. J) ("The Court is not convinced that a ruling in Appellants' favor would amount to a retroactive application of the law since the act became effective *during* Appellants' redemption period and since they had also sought a loan modification during that time." (emphasis added)). The case does not address HAMP eligibility where the redemption period expired before the HAMP's enactment.

Second, even if the Lending Statutes applied to Plaintiff's mortgage, the statutes do not compel Defendant to modify Plaintiff's loan. The language of the HERA requires the Secretary of the Treasury "to encourage the servicers of the underlying mortgages, considering net present value to the taxpayer, to take advantage of the HOPE for Homeowners Program." 12 U.S.C. § 5219. While the Secretary must *encourage* mortgage servicers to modify loans, the statute does not *require* Defendant or other mortgage servicers to modify loans. *See Escobedo v. Countrywide Home Loans, Inc.*, No. 09cv1557 BTM(BLM), 2009 WL 4981618, at *3 (S.D. Cal. Dec. 15, 2009) ("The Agreement does not state that Countrywide must modify all mortgages that meet the eligibility requirements."); *Williams v. Geithner*, No. 09-1959 ADM/JJG, 2009 WL 3757380, at *6 (D. Minn. Nov. 9, 2009) (concluding that loans may be modified where appropriate and with discretion). Therefore, even if Plaintiff were eligible for modification, there would be no duty imposed on Defendant for which Plaintiff could seek relief.

Finally, assuming Plaintiff is eligible for modification (which she is not) and assuming that the Lending Statutes impose a duty on Defendant to modify Plaintiff's mortgage (which they do not), the statutes do not create a private right of action under which Plaintiff may seek relief. "There is no express or implied right to sue fund recipients . . . under TARP or HAMP." *Aleem v. Bank of America*, No. EDCV 09-01812-VAP (RZx), 2010 U.S. Dist. LEXIS 11944, *12 (C.D. Cal. Feb. 9, 2010); *see also Zendejas v. GMAC Wholesale Mortgage Corp.*, No. 1:10-CV-00184 OWW GSA, 2010 WL 2490975 (E.D. Cal. June 16, 2010) (concluding that third-party beneficiaries cannot enforce government contracts "absent a clear intent to the contrary," and that HAMP expresses no such intent). Accordingly,

Plaintiff's claims for modification under the Lending Statutes fail.

Plaintiff's fifth claim fails for similar reasons. Count V alleges that by failing to modify Plaintiff's loan, Defendant violated a consent agreement between the Michigan Attorney General and Defendant. Plaintiff argues that the AGCA should afford relief to Plaintiff even though it was enacted 10 months after the expiration of her redemption period because in Section 4.6(a) the AGCA states that "[t]he foreclosure process for a Qualifying Mortgage of an Eligible Borrower will not be initiated or advanced for the period necessary to determine such Eligible Borrowers' interest in retaining ownership and ability to afford the revised economic terms." By the time Defendant entered into the AGCA, however, the foreclosure process was entirely complete with respect to Plaintiff's property. Therefore, no qualifying mortgage existed to be modified. Furthermore, a consent agreement is interpreted as a contract. *See Rosen v. Tenn. Comm'r of Finance & Admin.*, 288 F.3d 918 (6th Cir. 2002). Even if Plaintiff's mortgage had not already ceased to exist at the time Defendant entered into the AGCA, Plaintiff cannot enforce the terms of the contract as a non-party. Indeed, the AGCA itself states at section 9.5, "This Agreement is not intended to confer upon any person any rights or remedies, including rights as a third party beneficiary. This Agreement is not intended to create a private right of action on the part of any person or entity other than the parties hereto." For these reasons, Defendant's motion for summary judgment is granted as to Counts II, IV, and V.

**IV. Misrepresentation**

In Count I of the Complaint, Plaintiff asserts that Defendant made material misrepresentations by promising Plaintiff that her mortgage was being reviewed for

modification or other work-out arrangements when Defendant actually had no intention of assisting Plaintiff. (Compl. ¶ 4.) Plaintiff also asserts that Defendant made the alleged representations to Plaintiff so that Defendant could make a larger profit from foreclosing on Plaintiff's home, and that Defendant's misrepresentations impaired Plaintiff's efforts to retain her home. (*Id.*) In its motion, Defendant argues that Plaintiff fails to allege actionable misrepresentation and that any representation Plaintiff asserts relates to a future event, and is therefore not actionable.

> Under Michigan law, actionable fraud requires proof:
>
> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 114, 313 N.W.2d 77, 82 (1981) (*quoting Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976)). Additionally, "a promise regarding the future cannot form the basis of a misrepresentation claim." *Forge v. Smith*, 458 Mich. 198, 212, 580 N.W.2d 876, 884 (1998).

Plaintiff's misrepresentation claim fails because Plaintiff has not shown that Defendant made a material representation that was false. As previously explained, Plaintiff admits Defendant reviewed Plaintiff's requests for loan forbearance, work-out, or modification on multiple occasions and never indicated that a modification would be granted. Also discussed above, the email exchange reflected in Exhibit E of Plaintiff's Response contains no representations by Defendant. Since Defendant actually reviewed Plaintiff's loan and accurately informed Plaintiff of the outcome of her loan review, Defendant did exactly what

11

it said it would do, and therefore did not make a misrepresentation. Thus, Plaintiff fails to meet the first two elements of a misrepresentation claim and Count I fails as a matter of law.

To the extent Plaintiff attempts to allege a claim based on a representation that Defendant would review Plaintiff's mortgage for modification with no intent to do so, Plaintiff's claim still fails because Defendant's alleged statement would be a promise to conduct a review in the future and cannot give rise to a viable misrepresentation claim. Furthermore, reliance on a promise that Defendant would review Plaintiff's mortgage for modification could not cause an injury in this case where, as discussed in detail above, Plaintiff is not entitled modification regardless of her eligibility under the Lending Statutes. Therefore Defendant's motion for summary judgment is granted as to Count I.

**V. Bad Faith**

Lastly, in Count III of the Complaint, Plaintiff asserts that Defendant owed a duty to Plaintiff to act in good faith while servicing Plaintiff's loan and that Defendant breached that duty by "representing to Plaintiff modification efforts were being performed," by failing to modify Plaintiff's loan, and by refusing to communicate with Plaintiff regarding other options for Plaintiff's mortgage. (Compl. ¶ 6.) In response, Defendant argues that, since Defendant never represented that Plaintiff qualified for a modification, it is impossible for Defendant to have acted in bad faith and that Plaintiff fails to establish an independent cause of action for bad faith under Michigan law beyond the contractual dealings between the parties. Plaintiff failed to respond to this argument.

The Michigan Supreme Court has held that "absent allegations and proof of tortious conduct existing independent of [a breach of contract], exemplary damages may not be

12

awarded in common-law actions brought for breach of a commercial contract." *Kewin v. Mass. Mutual Life Ins. Co.*, 409 Mich. 401, 420-21, 295 N.W.2d 50, 55 (1980). Additionally, where a Plaintiff has "pleaded no more than defendant's bad-faith failure to pay its contractual obligation," the pleading is "insufficient to establish an independent tort action." *Isagholian v. Transamerica Ins. Corp.*, 208 Mich. App. 9, 17, 527 N.W.2d 13, 17 (1994). As Plaintiff has presented nothing more than allegations of bad faith in connection with alleged contractual obligations, Count III fails as a matter of law.

## VI. Conclusion

After fully reviewing the evidence before the Court, it is clear that all of Plaintiff's claims fail as a matter of law. Although Plaintiff's financial situation is the kind of unfortunate circumstance the Lending Statutes were enacted to remedy, those statutes provide no legal remedy to Plaintiff that this Court can enforce.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED**.

A judgment consistent with this opinion and order shall enter.

                                                              s/ PATRICK J. DUGGAN
                                                              UNITED STATES DISTRICT JUDGE

Copy to:
Vanessa G. Fluker, Esq.
Courtney D. Roschek, Esq.
Martin S. Frenkel, Esq.